**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH MCKEVITT, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>FLEXIBILITY CAPITAL INC.; MICHAEL PEELER; and all other related entities or individuals,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff JOSEPH MCKEVITT (hereinafter "Plaintiff") individually and on behalf of other individuals similarly situated, upon personal knowledge as to facts pertaining to himself and on information and belief as to all other matters, by and through their undersigned counsel, Leeds Brown Law, P.C., bring this class action complaint against Defendants FLEXIBILITY CAPITAL, INC.; MICHAEL PEELER; and all other related entities or individuals (collectively "Defendants").

**<u>NATURE OF ACTION</u>**

1. This is a proposed class action under 29 U.S.C. § 207 of the Fair Labor Standard Act (FSLA), as well as Article 6 and 19 of the New York Labor Law (NYLL) brought on behalf of employees of Defendants that performed work without proper wage and commission compensation, including overtime.

2. Flexibility Capital Inc. (hereinafter "Flexibility Capital") is a financial service company based in New York servicing small businesses nationwide. Flexibility Capital offers

alternative funding solutions such as lines of credits and merchant cash advances across various industries including construction, manufacturing, auto repair, and so on.[1]

3. Flexibility Capital boasts that "[s]ince our founding in 2018, we have successfully provided over $1 billion in funding to support the growth of numerous businesses."[2]

4. In order to achieve such a reputation, Flexibility Capital employs individuals, such as Plaintiff, to contact prospective clients and small business owners seeking out financial services and products.

5. Since March 2020, Defendants have engaged in a policy and practice of failing to pay Plaintiff and other similarly situated workers for all hours worked, requiring them to regularly work in excess of forty (40) hours per week without providing overtime compensation, failure to provide accurate wage statements and paystubs, as required by applicable State and Federal law, failure to pay commissions owed, and failure to notify employees of changes to the commission structure in writing.

6. Since approximately March 2020 and, upon information and belief, continuing through the present, Defendants have wrongfully classified Plaintiff and other similarly situated employees as exempt from overtime compensation.

7. Such workers were wrongfully classified as exempt from overtime compensation because Defendants failed to comply with the statutory requirements for those individuals to be deemed exempt. Therefore, Defendants have wrongfully paid their workers under the guise of deeming them exempt from wage payments.

8. Under New York law, the obligation is on the employer to establish that a worker is properly deemed exempt from overtime. Defendants cannot satisfy their burden.

---

[1] https://flexibilitycapital.com/about-us (last accessed May 7, 2026)
[2] https://flexibilitycapital.com/about-us (last accessed May 7, 2026)

9. Defendants have engaged in a policy and practice of: (1) failing to pay wages, (2) failing to pay overtime compensation; (3) failing to pay commissions; (4) failing to provide wage theft notices; and (5) failing to provide accurate paystubs in accordance with the FSLA and New York Labor Law and implementing regulations

10. Plaintiff has initiated this action seeking, for himself and all similarly situated employees in New York State, all compensation, including overtime compensation, and unpaid commissions, that he was deprived of, plus interest, liquidated damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendants pursuant to FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1331 and 1337. This court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under the New York Labor Law.

12. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendants' principle place of business in this District as defined in 28 U.S.C. § 1391(c).

## PARTIES

13. Plaintiff McKevitt is an adult individual residing in the state of New Jersey. Plaintiff was employed by Defendants from approximately March 2025 to March 2026 at Defendants' Manhattan office.

14. Upon information and belief, Defendant Flexibility Capital Inc. is a domestic business corporation and maintains their headquarters at 1501 Broadway, Suite 1814, New York, NY, 10036.

15. Upon information and belief, Defendant Michael Peeler is the owner, chief executive officer, and operator of Defendant Flexibility Capital Inc, and his principal business address is 1501 Broadway, Suite 1814, New York, NY, 10036.

16. Defendant Peeler holds himself out as being in charge of the business entity under

the Flexibility Capital brand, including maintaining a physical presence in the work environment, directing the work performed by the employees, dictating policies that apply to the employees, setting the rates of pay of the employees, and generally overseeing the operations of the business entities on a daily basis.

17. Collectively, Defendants, under the supervision and control of Defendant Peeler, operate as a joint entity under the umbrella of Flexibility Capital.

18. Defendants maintained control, oversight and direction over the work performed by Plaintiff. The work performed by Plaintiff and others similarly situated simultaneously benefited Defendants.

## FACTUAL ALLEGATIONS

19. Upon information and belief, since approximately 2018, Defendants have operated an online small-business financing marketplace and have employed numerous individuals to perform tasks related to selling and marketing Defendants' lending and financial services and products, including business term loans, lines of credit, equipment financing, amongst other services.[3]

20. In the performance of those services, Defendants employ a staff of cold callers, sale representatives, and administrative workers under the guise that those workers will receive significant sums of monies in the form of commission payments.

21. Most, if not all workers, toil for hours daily and dozens of hours per week to chase leads solely to the benefit of Defendants and without ever seeing the fruits of their labor.

22. During the course of his employment, Plaintiff was subjected to unfair employment practices. Plaintiff, and upon information and belief, similarly situated employees of Defendants,

---

[3] https://flexibilitycapital.com/gg/?gad_campaignid=23737482366&gad_source=1&gbraid=0AAAAAoRKJBCzenggaOH2g72DNgXOKwGYY (last accessed May 6, 2026)

were incentivized to work arduously long hours to meet the nearly impossible demands set by Defendants. Consequently, Plaintiff often worked over forty hours a week, without proper overtime compensation.

23. On or around March 3, 2025, Plaintiff was hired as a Funding Specialist at Flexibility Capital's Sales Department in their Manhattan office. During the course of his employment, Plaintiff would call leads seeking Defendants' financial services and products for which he would receive a commission.

24. As a condition of his employment and from the outset, Plaintiff signed his offer letter, where he agreed to a base $40,000 salary and a commission structure as outlined in his offer letter. Plaintiff agreed to a commission-based compensation structure under which he would earn commissions at escalating rates of approximately 10%, 15%, and 25%, with 25% serving as a maturity rate that, once achieved, would continue for subsequent deals. Plaintiff was also entitled to receive approximately 6% commissions on renewal business generated from his prior sales, and commissions were paid on a weekly basis.

25. However, several months into his employment, Defendants unilaterally and without Plaintiff's written consent materially altered this structure, reducing commission rates to approximately 2.5%, 5%, and 7%, eliminating commissions on renewals entirely, and implementing a monthly reset that prevented Plaintiff from maintaining any higher commission tier. Defendants further changed the timing of commission payments from weekly to monthly, resulting in delayed and reduced compensation. These changes were imposed without agreement. As a result, Plaintiff received substantially less compensation than he had originally agreed to and earned.

26. Since at least March 2020, Defendants employed Plaintiff and other similarly

situated employees who were wrongfully classified as exempt from overtime in furtherance of their financial service business. Defendants misclassified a significant portion of its workforce as being exempt from overtime. For example, exempt employees included individuals that conducted no meaningful oversight or supervision of employees who would be labeled as managers, as well as workers without meaningful authority to perform their job duties without oversight and direction from Defendants' management were improperly deemed salaried and exempt.

27. Plaintiff did not perform duties or responsibilities that would allow him to be considered exempt from overtime.

28. Defendants have violated both the salary basis and duties test under the FSLA and New York Labor Law and its implementing regulations. *See* 12 NYCRR § 142-3.12(2)(i) (defining "executive" exemption); *id.* at 3.12(2) et seq. (defining other exemptions).

29. Plaintiff typically worked more than 50 hours each week. Specifically, Plaintiff was regularly required to come in and open the office at 7:45 am and would be in the office until approximately 6:30 pm.

30. Though Plaintiff would work more than 40 hours per week, his compensation remained the same – namely, he would only be paid his base salary as well as portions of the commissions he earned.

31. Plaintiff did not exercise independent judgment and discretion on matters of significance while employed by Defendants.

32. Plaintiff was subject to extensive oversight and control by Defendants over the means used to complete the tasks he performed for Defendants, including Defendant Peeler

33. Defendants failed to pay Plaintiff all of his overtime wages, at the rate of one and one-half times his regular rate of pay, for the time in which he worked after the first forty hours in any given week.

34. Defendants provided Plaintiff and other similarly situated employees with paystubs that did not reflect the total amount of hours worked, accurate pay rate, and/or commission payments. In fact, upon information and belief, though Plaintiff and similarly situated employees were required to clock in and clock out, Defendants would adjust their hours retroactively to reflect that they worked a regular 8-hour work shift when that was not the case.

35. Defendants failed to provide Plaintiff and other similarly situated employees with proper wage notice and paystubs.

36. Upon information and belief, the putative class members similarly lacked control, independent judgment, discretion, and did not have any managerial duties.

37. Upon information and belief, putative class members were subject to the same payment practices as Plaintiff.

## CLASS ALLEGATIONS

38. Plaintiff brings this matter on behalf of himself and those similarly situated, pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3).

39. This action is brought on behalf of the Plaintiff and a putative Class consisting of each and every other person who worked for Defendants selling or marketing financial products in any capacity, including but not limited to those classified as financial representatives, interns, broker trainees, financial product sales trainees, financial advisor trainee, financial product salespersons, or financial service account managers within the State of New York at locations operated by or on behalf of Defendants, who were compensated at less than $110,000 annually –

or other amounts at set by statute, rule, or regulation as a highly compensated and exempt employee.

40. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive and declaratory relief.

41. Plaintiff may redefine the class as appropriate based on objective materials and information maintained by Defendants that are not known at this time to Plaintiff and his counsel.

42. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Classes, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

43. Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class Members have been damaged and are entitled to recovery as a result of Defendant's common, uniform, and unfair policies and practices.

44. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are hundreds of workers who are Class Members as described above who have been damaged by Defendants' misconduct.

45. Commonality: The questions of law and fact common to Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants properly compensated Plaintiff and the Class members for all hours worked;

b. Whether Defendants properly compensated Plaintiff and the Class members overtime compensation at one and one-half of their regular rate of pay;

c. Whether Defendant provided Plaintiff and the Class with proper commission payments;

d. Whether Defendants provided Plaintiff and the Class with proper notice upon hiring, or yearly wage notice, or weekly wage statements; and

e. Whether Defendants provided Plaintiff and the Class with paystubs.

46. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class is asserting the same claims related to the same deceptive and misleading practices. Plaintiff is entitled to relief under the same causes of action as the other Class Members. Plaintiff and Class Members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all Class Members.

47. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of Class Members he seeks to represent; his claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation, and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendant have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

48. The Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to traditional litigation

of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading practices.

49. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia:*

50. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i. The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii. The individual claims of Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions.

iii. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Class and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

iv. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

vi. This class action will assure uniformity of decisions among Class Members;

vii. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

viii. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

51. Accordingly, this Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

52. Separate classes may be necessary as to specific factual circumstances or specific claims, including a class for business entities, guarantors, business owners, and other classifications as necessary.

**FIRST CAUSE OF ACTION**
**Violation of FSLA – Overtime Compensation**

53. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

54. Plaintiff brings this claim individually and on behalf of other members of the putative collective action.

55. Pursuant to 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

56. Defendants is an "employer" within the definition under the U.S.C. § 203(d).

57. Plaintiffs and other members of the putative collective action, during all relevant times, engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce.

58. 29 U.S.C. § 213 exempts certain categories of employees from minimum wage obligations. None of these exemptions apply to Plaintiffs or other similarly situated employees.

59. Defendants violated the FLSA by failing to pay Plaintiff and other members of the putative collective action overtime wages at a rate of one and one-halftimes the normal rate of pay for all hours worked over 40 in any given week, including when Plaintiffs worked more than 50 hours per week.

60. Plaintiff regularly worked over 50 hours per week.

61. Specifically, Plaintiff would work from 7:45 am to approximately 6:30 pm from Monday to Friday, approximately 53 hours per week.

62. Defendants failed to pay any overtime compensation.

63. Defendants did not provide paychecks that accurately reflect the total amount of hours Plaintiff worked.

64. Other workers were wrongfully misclassified as exempt from overtime.

65. Upon information and belief, the failure of Defendants to pay Plaintiff and other members of the putative collective action their rightfully owed wages was willful.

66. By the foregoing reasons, Defendants are liable to Plaintiff and members of the putative collective action in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Violation of New York Labor Law – Failure to Pay Overtime

67. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

68. Plaintiff brings this claim individually and on behalf of Class members.

69. 12 NYCRR § 142-2.2 and other implementing regulations governing Defendants'

conduct requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…."

70. Defendants are an "employer" within the definition under the 12 NYCRR § 142-2.2 and the implementing regulations.

71. Plaintiff was an "employee" within the definition under the 12 NYCRR § 142-2.2 and the implementing regulations.

72. Plaintiff, and upon information and belief, and other putative Class Members, would on occasion, work over forty hours a week while performing work on behalf of Defendants.

73. Plaintiff regularly worked over 50 hours per week.

74. Specifically, Plaintiff would work from 7:45 am to approximately 6:30 pm from Monday to Friday, approximately 53 hours per week.

75. Defendants did not pay overtime compensation at one and one-half times his regular hourly rate for all hours worked over 40 in a given week.

76. Defendants failed to pay any overtime compensation.

77. Plaintiff, and upon information and belief, those individuals similarly situated, did not receive overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in any given week.

78. Defendants did not provide paychecks that accurately reflect the total amount of hours Plaintiff worked.

79. Plaintiff was not exempt from overtime pursuant to the Labor Law and the implementing regulations, as Defendants cannot satisfy the salary basis test or the duties test under 142-3.12(2) et seq. and case law interpreting the same.

80. Other workers were wrongfully misclassified as exempt from overtime.

81. Consequently, by failing to pay Plaintiff, and other individuals similarly situated, all their overtime compensation, Defendants violated Labor Law § 663 and 12 NYCRR § 142-2.2.

82. Upon information and belief, Defendants' failure to pay overtime compensation was willful.

**THIRD CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Pay Wages**

83. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

84. Plaintiff brings this claim individually and on behalf of Class members.

85. Pursuant to Article 6 of the Labor Law, workers such as Plaintiff is protected from wage underpayments and improper employment practices.

86. Labor Law § 190 et seq. and its implementing regulations, including the Wage Orders, protects workers when they fail to receive all unpaid commissions by underpayments by their employers.

87. According to Labor Law § 191 and the cases interpreting same, workers are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

88. Defendants have failed to pay Plaintiff and members of the Class for all hours worked in a given work week.

89. Defendants also withheld commissions from Plaintiff and members of the Class by unilaterally adjusting the commission rate without agreement.

90. Defendants' failure to pay Plaintiff and the members of the Class is a violation of Labor Law §§ 191, 191-b, 191-c, 193, 195, and 198.

91. By withholding overtime and commissions from Plaintiff and members of the Class, pursuant to Labor Law § 193 and the cases interpreting same, Defendants unlawfully withheld wages.

92. Due to Defendants' violation of the Labor Law, Plaintiff and the Class are entitled to recover from Defendants: an award of damages for their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to the Labor Law § 198.

## FOURTH CAUSE OF ACTION
**Violation of New York Labor Law – Failure to Pay all Earned Commissions**

93. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

94. Plaintiff brings this claim individually and on behalf of Class members.

95. Labor Law § 190 et seq. and its implementing regulations, including the Wage Orders, protects workers when they fail to receive all unpaid commissions because of underpayments or illegal deductions by their employers.

96. Labor Law § 191(c) mandates that "A commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned; provided, however, that if monthly or more frequent payment of wages, salary, drawing accounts or commissions are substantial, then additional compensation earned, including but not limited to extra or incentive earnings, bonuses and special payments, may be paid less frequently than once in each month, but in no event later than the time provided in the employment agreement or compensation plan."

97. Labor Law § 191-b mandates that "A sales representative during the course of the contract, shall be paid the earned commission and all other monies earned or payable in accordance with the agreed terms of the contract, but not later than five business days after the commission has become earned."

98. Pursuant to Labor Law § 191-c, "When a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated."

99. Plaintiff is covered as either a "sales representative" or "commission salesperson" under Labor Law §§ 191(c), 191-b, and/or 191-c, as that term is defined in the statute, its implementing regulations, and in the case law on the same.

100. Defendants are an "employers" and "principal(s)" under Labor Law §§ 191(c), 191-b, and/or 191-c – as that term is defined in the statute, its implementing regulations, and in the case law on the same.

101. Plaintiff entered into a written commission agreement with Defendants which detailed the formulation and payment of commissions for work that Plaintiff completed upon his signing of his offer letter from Defendants.

102. Plaintiff performed his job duties and responsibilities as required by that commission agreement.

103. Plaintiff earned his commissions as that term is defined in the commission agreement, the Labor Law, its implementing regulations, and case law on the same.

104. Other similarly situated workers entered into the similar agreements and were subject to the same commission scheme implemented by Defendants as to their workforce.

105. Although Plaintiff and putative class members were entitled to a specific amount per closed deal, Defendants unilaterally lowered Plaintiff's commission after the sale occurred.

106. In fact, Defendants attempted to enforce this new commission structure after Plaintiff spent considerable time and energy devoted to obtaining customers and assisting them in the loan application process.

107. Plaintiff serviced Defendants' customers to ensure that they would not obtain services or products from other services.

108. However, Defendants unilaterally and without approval lowered Plaintiff's commission rate without agreement or without providing a new commission agreement that detailed how this commissions would be calculated.

109. Defendants additionally breached Labor Law § 191-c by refusing to pay Plaintiff commissions they had earned five (5) business days after termination or five (5) business days after the commissions became due.

110. Pursuant to the case law and statutory protections, Plaintiff was protected from wage and commission theft during and after his employment with Defendants.

111. By unilaterally changing Plaintiff's commission structure, Defendants violated Labor Law §§ 191(c), 191-b and 191-c by failing to pay the Plaintiff in accordance with their commission agreement that details the method by which compensation will be calculated.

112. By failing to provide Plaintiff and other similarly situated workers with all earned commissions, Defendants have violated Labor Law § 190 et seq. including §§ 191, 191-b, 191-c, and 198.

113. Plaintiff and putative class members were harmed by Defendants' actions in an amount to be determined at trial, plus damages, penalties, interest, attorney's fees, and costs.

114. Plaintiff also seeks injunctive and declaratory relief such that if Defendants' customers continue to pay Defendants, then Plaintiff would be owed commissions under that Commission Agreement – up to and beyond the resolution of this action – such that Defendants may not unilaterally terminate the Commission Agreement without comply with their obligations therein.

**FIFTH CAUSE OF ACTION**

**Violation of New York Labor Law – Failure to Provide Wage Statements**

115. Plaintiff repeats and hereby incorporates each of the above allegations into this cause of action, including the facts described therein.

116. Plaintiff brings this claim individually and on behalf of Class Members.

117. The Wage Theft Notice Act was passed in the early 2010s to protect employees from wage theft and ensure that adequate records would be kept concerning how employees were paid. Specifically, Labor Law §§ 195 and 198 provides obligations and monetary remedy in instances where the employer fails to provide its employees at the time of hire, and upon change, a written wage notice setting forth the rate of pay and other wage requirements. Further, Labor Law § 195(3) and § 198 provides protection and remedies for employees who do not receive pay stubs with the appropriate information.

118. As stated in Labor Law § 195(1), every employer shall: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances."

119. In violation of Labor Law § 195(1), Defendants failed to provide Plaintiff with a written wage notice upon the initiation of their employment.

120. Labor Law § 195(3) requires an employer such as Defendants to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked…"

121. According to Labor Law § 198-1 including under subsections 1-b and 1-d, Plaintiff is entitled to $50.00 for every violation Defendants committed by failing to provide a compliant paycheck or Wage Theft Notice at the time of hiring, or at any point during his employment.

122. Plaintiff did not receive accurate weekly paystubs or any notice from Defendants on his wages, including any statement that accurately reflected the hours he worked or the number of deductions that were being taken from his wages.

123. Additionally, Plaintiff and similarly situated workers did not receive commission breakdowns and records that would provide the appropriate calculations and breakdowns on those commissions as wage compensation.

124. For the foregoing reasons, Defendants have violated Labor Law § 195 and § 198 and are liable to Plaintiff and putative Class Members in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

(a) For an order certifying the Class/Collective under Federal Rule of Civil Procedure 23(b)(3) and naming Plaintiff as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c) For compensatory damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper including declaratory and injunctive relief.

**DEMAND FOR TRIAL BY JURY**

A jury trial is demanded on all claims so triable.

Dated: May 13, 2026
Carle Place, NY

Michael A. Tompkins, Esq.
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347

Carle Place, NY 11514
Tel: 516.873.9550
mtompkins@leedsbrownlaw.com

*Counsel for Plaintiff and the Proposed Class*

***LEEDS BROWN LAW, P.C.***

# CONSENT TO JOIN FORM

I, Joseph McKevitt, consent to be a party plaintiff in a lawsuit against Defendants Flexibility Capital Inc.; Michael Peeler; and all other related entities or individuals, in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 206 and other provisions including § 207.

1. I hereby designate Leeds Brown Law, P.C., to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

2. I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

Dated: 13/05/2026

Joseph McKevitt (May 13, 2026 12:48:42 EDT)
Signature

Joseph McKevitt
Printed Name